THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

DONNELL BAINES,

          PLAINTIFF,

42 U.S.C. § 1983
and
28 U.S.C § 1332

VERIFIED AMENDED
COMPLAINT

V.

JURY TRIAL DEMANDED
(10-CV-9545)

THE CITY OF NEW YORK, et al.,

          DEFENDANTS.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-6-2013

1.) Pursuant to an Order, dated January 14th, 2013, the Plaintiff in the above captioned matter has been given the opportunity to amend his Complaint to address certain deficiencies identified by the above Defendant City (This Complaint is attached hereto). (At all times herein where Original Complaint is referred to, See Exhibit A).

2.) Plaintiff hereby amends this Complaint with the allegations contained herein, however, Plaintiff wishes respectfully that this Honorable Court should take notice to the following facts:

    A) Discovery has been stayed by this Court in this matter; and.,

RECEIVED
FEB - 6 2013
PRO SE OFFICE

    B) Defendant City has not properly identified the four defendant John Doe Officers who committed the acts alleged in Plaintiff's Original Complaint; and,

    C) Plaintiff is thereby limited in his ability to allege which defendant Officer committed which specific act.

(1)

3.) Further Compounding this improper identification, the defendant City has turned over to the Plaintiff the names of (8) officers who, as alleged by the defendant City, were "On the Scene" for a brief period of time, but did not submit to the Plaintiff information as to which of these officers entered Plaintiff's home, nor did the defendant City submit to the Plaintiff any photographs to further aid the Plaintiff in amending these allegations.

4.) Therefore, Plaintiff will submit all names given to him by the defendant City as being deemed to be defendants in this matter, and, the Plaintiff hereby requests discovery as will aid the Plaintiff in specifying whom out of these named defendants were perpertrators in the acts alleged herein against the Plaintiff. Plaintiff hereby incorporates herein, all allegations contained in Exhibit A, hereinafter referred to as "Original Verified Complaint."

5.) Plaintiff hereby incorporates herein, paragraphs #1-#8 of his attached Original Verified Complaint, albeit, with the following amendments:

      A) In paragraph #5 therein, the officer's name is believed to be BRIAN WHITE (Tax #927773);

      B) In paragraph #6 therein, the officers name is believed to be PETER GUYHEEN (Shield #12726);

C) In Paragraphs #7-#8 therein, the Officers names are one of the following:

    (i) MICHAEL DELMERICO (Shield # 1138);

    (ii) JOHN CHRISTMAN (Shield # 10292);

    (iii) JOSEPH LEONARD (Shield # 20061);

    (iv) CHRIS McNERNEY (Shield # 11264);

    (v) Sergeant JOSEPH CUTRONE (Shield # 1168).

6) Plaintiff also adds two new additional defendants herein:

A) Officer ODONOGHUE of the 19th Precinct, who at all time relevant mentioned herein violated the Civil rights of the Plaintiff under color of State law 42 U.S.C. § 1983.

B) KIMBERLY CRYSTAL MITCHELL, who is being sued herein for various tortious claims including but not limited to; Mental Anguish; Extreme Emotional Distress; Theft of Property; Outrage; Pain and Suffering, and this Court has Jurisdiction under 28 U.S.C. § 1332 (Diversity Jurisdiction), and the Southern District of New York is the appropriate venue under 28 U.S.C. § 1391(a)(2), and under 28 U.S.C. § 1402 (b). (NOTE* Defendant Mitchell resides in the State of California, and the amount in dispute is greater than $75,000 exclusive of interest and costs.)

(3)

# <u>FACTS OF THE CASE</u>

7.) On or about October 1st, 2009, the Plaintiff and his then live-in girlfriend, defendant Mitchell, ended their romantic relationship and the defendant removed all of her belongings from the Plaintiff's home to her sister's apartment in Astoria, Queens, New York, and also returned her copy of the Plaintiff's house key to the Plaintiff.

8.) Defendant Mitchell would occasionally visit, the defendant did also spend the night at the Plaintiff's home during the month of October about 3 or 4 times, however, defendant Mitchell was not allowed to or permitted to be in the Plaintiff's residence when the Plaintiff was not at home.

9.) The Plaintiff, who was of the understanding that the relationship between he and the defendant was at and end, began a new relationship with a woman named Shana Sellers, who resides in the city of Charlotte, in the State of North Carolina.

10.) The Plaintiff, who had believed that he was in a "Friendship" based relationship with defendant Mitchell, confided in her as to his new relationship with Ms. Sellers, to which the defendant appeared to be happy for the Plaintiff and also requested to meet the Plaintiff's new "girlfriend".

11.) On or about November 10th, 2009, Ms. Sellers did visit with the Plaintiff at his residence and thereafter defendant Mitchell was introduced to Ms. Sellers. Ms. Sellers stayed with the Plaintiff in New York for aproximately 7 days.

12.) On or about November 17th, 2009, Ms. Sellers left the Plaintiff's residence and returned home to North Carolina. Shortly thereafter, defendant Mitchell, while visiting with the Plaintiff did inform the Plaintiff that she did not like Ms. Sellers, and that she wished to recommence her relationship with the Plaintiff. The Plaintiff denied her advances and informed the defendant that he is serious about Ms. Sellers, to which the defendant threatened that if she sees Ms. Sellers again she was going to "kick her ass", after which the Plaintiff told Ms. Mitchell to leave his apartment, which she did.

13.) On or about November 23rd, 2009, Ms. Sellers did again visit the Plaintiff at his apartment, and Ms. Sellers did stay at the Plaintiff's apartment continuously from the aforementioned date until December 8th, 2009.

14.) On or about December 7th, 2009, defendant Mitchell and Ms. Sellers did get into an argument in the Plaintiff's home which escalated into a physical altercation between defendant mitchell and Ms. Sellers. This altercation occurred at about 9 pm.

15.) The Plaintiff, did come between both ms. Sellers and defendant Mitchell to break up the fight. Thereafter the Plaintiff removed Mitchell (defendant) from Plaintiffs apartment while the defendant continuously threatened to call the police on both the Plaintiff and ms. Sellers for assaulting the defendant, however, the Plaintiff never in any way physically assaulted, harassed, or menaced said defendant. The time of said defendant's departure from the Plaintiff's apartment was at or about 9:30pm on December 7th, 2009.

16.) On December 8th, 2009, at or about 9:30 Am, ms. Sellers departed from the Plaintiff's apartment and went back to her home in the State of North Carolina.

17.) On December 8th, 2009, at or about 1pm, the Plaintiff did receive a menacing and threatning telephone call from defendant Mitchell wherein she stated that the Plaintiff was "not safe", and that said defendant was going to bring some people to Plaintiff's home to beat him up and put Plaintiff in the hospital if, the Plaintiff did not allow said defendat to come back to Plaintiff's home to fight with ms. Sellers. Plaintiff then informed said defendant that ms. Sellers had already left his home to which said defendant replied that the Plaintiff was a liar and that said defendant was going to lie to the police and blame the Plaintiff for assaulting her and that when he got out of Jail the defendant would have her friends to rob the Plaintiff, in his home.

18.) These threats and allegations made by the defendant did cause the Plaintiff to become extremely emotionally distressed and fearful for his life and safety.

19.) At or about 1:30 pm, On December 8th, 2009, defendant Mitchell did begin to bang violently on the Plaintiff's apartment door while yelling for the defendant to open the door. Plaintiff looked through his "peep hole" and did observe defendant Mitchell in his hallway and said defendant was in the company of 2 unknown black males.

20.) The Plaintiff then told defendant Mitchell and her accompanying male acquaintances that if they did not leave his building at once that the Plaintiff was going to call the Police, to which one of the males responded that the Plaintiff was "a bitch-ass nigger". The defendant and the 2 males then said they were going to leave but threatened that they would be coming back or that they would find the Plaintiff "on the street", after which the defendant and the males did leave the Plaintiff's building.

21.) The Plaintiff, who felt unsafe in his own home, left his apartment and went to his parents home in Queens Village, New York, and told both his father and sister what had just happened. Plaintiff's father and sister told the plaintiff that he must call the Police "if she comes back".

(7)

22.) The Plaintiff thereafter called Ms. Sellers and informed her of the recent happenings as well as defendant Mitchell's threat to lie to the police about Ms. Sellers and Ms. Mitchell's fight and tell the police it was the Plaintiff who assaulted the defendant, to which Ms. Sellers replied by directing the Plaintiff to have the police call her "if" they should arrive and that when they called Ms. Sellers would inform the police that it was she and not the Plaintiff who had a fight with defendant Mitchell who was the aggressor that Ms. Sellers only fought in self defense.

23.) The Plaintiff did arrive back at his apartment at or about 6 pm on December 8th, 2009. at about 7 pm, the Plaintiff did receive a phone call from defendant Mitchell who alerted the Plaintiff to the fact that he was on speaker phone and that the defendant (Mitchell) was in the company of police officers who could hear the Plaintiff as well. The defendant then stated that she wanted to come to the Plaintiffs apartment, to which the Plaintiff responded that said defendant was not allowed or permitted to come to his apartment.

24.) To the Plaintiff's best knowledge and recolection, an officer who identified himself by saying "this is Officer White of the N.Y.P.D.", this officer then informed the Plaintiff that defendant Mitchell "just wants to come to the apartment to get her belongings", to which the Plaintiff responded that "she has no belongings in my apartment, sir".

25.) Officer White then stated to the Plaintiff that he was informed by defendant Mitchell with the Plaintiff at the apartment. The Plaintiff then informed said officer that the information the officer received from defendant Mitchell was not true or correct, that the residence was in his name, that the Plaintiff had a copy of his lease in hand, and that although defendant Mitchell did live there at Plaintiff's residence in the past, she has since removed all her belongings from his residence and has not lived in the Plaintiff's apartment since early October of 2009 and that the defendant (Mitchell) has no authority to come into the Plaintiff's home.

26.) Officer White then stated, "but she says she's your girlfriend and she has the keys to your building and your apartment", to which the Plaintiff replied "if she has told you that she is my girlfriend that is untrue, and if she has a copy of keys to my apartment they were not given to her by me, they are illegally made and possessed by her and she should be arrested for having them".

27.) Officer White then stated "Well, she says she lives there so we have to believe her" to which the Plaintiff replied "that is ridiculous, what has she shown to you that proves she lives here? Her I.d. does not have my address on it, nor does she have any recent mail with both her name on it and this address. I, on the other hand, have my lease in my hand and I'm telling you that she has no authority to be here or to come into my home".

(9)

28.) The Plaintiff did then hear Officer White ask defendant mitchell if she still lived with the Plaintiff, to which defendant mitchell replied "No, not anymore, but my belongings are up there and he assaulted me", after which the Phone was disconnected from the defendant's end.

29.) The Plaintiff hereby incorporates herein, Paragraphs #9-#10 of his original Verified Complaint. (attached hereto).

30.) The Plaintiff then said through his closed apartment door to the defendants who were assembled in his hallway, "Kimberly, I don't care who you are with, I'm calling the Police right now! Get away from my apartment!"

31.) While the Plaintiff was removing his cell phone from his pocket so that he could call the Police, Plaintiff heard the sound of shaking keys, and his lock began to be unlocked from the outside by the defendants who quickly pushed their way into the darkened hallway of the Plaintiff's apartment.

32.) Plaintiff backed away from his door, turned and tried to run into the open living space of his apartment to escape what Plaintiff believed were illegal intruders.

33.) The Plaintiff hereby incorporates herein, paragraphs #13-#26 of his original Verified Complaint. (attached hereto)

34.) The Plaintiff then stated to the defendant officers that they have no right to enter the Plaintiff's home or to search him or his home.

35.) John Doe Officer #3 then went into the hallway outside the Plaintiff's apartment and in a very loud voice asked defendant Mitchell if they could have her consent to search the Plaintiff's home, to which defendant Mitchell replied "Yes, you can search it. I think he has a gun in there, but I know for sure that he should have some weed in there, and it should be in the kitchen cabinet."

36.) Defendant John Doe #3 then reenters the apartment and says to the Plaintiff "See, we don't need your permission, we have hers", to which the Plaintiff responded "She does not even live here", to which John Doe #1 replied "Shut up faggot".

37.) These three defendant's literally began to "ransack" the Plaintiff's home, flipping over the Plaintiff's bed, taking all of the items out of all the kitchen cabinets, removing all of the contents of the bathroom, emptying all of the contents of the Plaintiffs closet as well as emptying all of the contents of a very high cabinet in the hallway, and, also throwing all of the Plaintiff's personal papers and effects around with sheer disregard to the value and/or importance of the Plaintiff's personal property.

38.) These defendants Continuously asked the Plaintiff during the Course of this illegal Search to "Just tell us where the gun and the Shit is and we'll stop tossing your Place", to which the Plaintiff responded "I have no gun and I have no drugs. She is lying to you, there is nothing in my house".

39.) Plaintiff hereby incorporates herein, Paragraphs #28-#38 of his original Verified Complaint. (attached hereto).

40.) John Doe #1 then asked the Plaintiff what he was doing "living in a nice neighborhood like this", and then Stated "I thought niggers like you only lived in the hood".

41.) The Plaintiff was then escorted through his building's lobby and Placed in a Vehicle and taken to a Police Station which Plaintiff believes was the 19th Precinct. While at this Precinct's Station the Plaintiff was informed by Officer Odonoghue that defendant Mitchell was going to be escorted back to the Plaintiff's apartment So that She would be able to Collect her belongings. The Plaintiff thereafter did in fact inform defendant Odonoghue that nothing in the Plaintiff's apartment belonged to defendant Mitchell and asked defendant Odonoghue what he could do to stop her to which defendant Odonoghue responded "there is nothing I can do". The Plaintiff then asked defendant Odonoghue "Well, what if she steals Something?", to which defendant Odonoghue replied "If you have a dispute about property, that would be a Civil issue, So you'll have to Sue her for it in Court."

42.) The Plaintiff then demanded to be informed as to what he was being charged with and defendant Odonoghue informed him that he was being charged with misdemeanor assault on defendant Mitchell.

43.) The Plaintiff then told defendant Odonoghue to call Ms. Sellers as per her directions and gave said defendant her telephone number and told said defendant that Ms. Sellers would tell him that it was her and not the Plaintiff who assaulted defendant Mitchell. However, defendant Odonoghue refused to investigate the Plaintiff's claims and instead proceeded with the arrest processing of the Plaintiff.

44.) Meanwhile, defendant Mitchell was escorted by several unknown officers of the N.Y.P.D. back to the Plaintiffs apartment and while there she and these unknown defendant officers unlawfully re-entered the Plaintiff's home. While inside the unknown defendant officers allowed defendant Mitchell to confiscate various personal items of the Plaintiff's simply by stating to the defendant officers that the confiscated property was hers, without showing any proof of ownership.

## Violations of Plaintiff's Constitutional Rights Pursuant to 42 U.S.C. § 1983

45.) Plaintiff hereby incorporates herein, paragraphs #41-#54 of his original verified complaint, which is affixed hereto, albeit, with the following amendments:

46.) The defendant Officers were presented with ambiguous facts as to whether defendant Mitchell had authority to consent to their entry as well as to consent to the searching of the Plaintiff's home, and as such, the defendant Officers had a duty to investigate further before relying on defendant Mitchell's Consent.

47.) The defendant Officers had a duty to investigate and their negligence in performing this duty injured the Plaintiff by resulting in the illegal and unlawful search of his person and property, as well as the illegal and unlawful entry into the Plaintiff's home and the unlawful removal and confiscation of Plaintiff's Property.

48.) This neglected duty to investigate was, under the circumstances, owed to this Plaintiff and not to the Public in general. These defendant's were not properly trained by the defendant City as to what specifically should be done in the instance where an officer is confronted with conflicting or ambiguous facts as to who has true authority over a residence.

49.) Defendant City should have properly trained the defendant Officers to be able to recognize true situations of effective consent and given the Officers guidlines to follow as well as factors to look for in determining whether a person does in fact have "actual authority" to allow officers to enter a residence or to search a residence.

50.) Defendant City should also have properly trained these defendant officers that a warrantless entry into a persons home as well as a warrantless search of a persons home are unlawful without further inquiry where circumstances make it unclear whether property about to be entered, searched or seized is subject to mutual use by the person giving consent.

51.) Defendant City should have given these defendant officers guidlines or factors to look for in resolving disputes of actual authority to consent in ambiguous situations such as checking the disputed consenters identification, or requesting to see the lease associated with the disputed residence, or even checking for or requesting a peice of mail with the names of the disputing paties displayed alongside the address of the disputed residence.

52) Had the defendant City properly trained these defendant officers in the manner stated above then the violations of the plaintiff's rights would not have occurred (i.e., illegal entry; illegal search) or, the risk of these violations occurring would have been greatly reduced. Also, training officers who handle "so-called" domestic disputes to recognize the above situations and to respond appropriately to them as stated above is such an obvious and necessary part of domestic dispute training that the failure of the defendant City to include the aforementioned training points in the content of these officers training must reasonable be considered to be attributed to defendant City's deliberate indifference.

(15)

53.) Therefore, due to the causal nexus between the absence of the specific training of the defendant officers by the defendant City, and, the violation of the Plaintiff's Fourth Amendment rights as a result of the actions of these improperly / untrained defendant officers, the defendant City's failure to train these officers not to violate the Plaintiff's rights in the aforementioned specified points and ways must be attributed to the City's deliberate indifference to the violation of those rights, and as such, the defendant City is liable for the violations of the Plaintiff's rights.

54.) Defendant Odonoghue is also liable to the Plaintiff as he was also informed by the Plaintiff that defendant Mitchell did not live at his apartment, and instead of investigating this contested authority this defendant officer was deliberately indifferent to the Plaintiff's property claims. This defendant also directed as well as condoned the act of the other defendant officers who drove defendant Mitchell back to the Plaintiff's apartment to commit what can only be characterized and described as a "Police escorted burglary" of the Plaintiff's home and the illegal confiscation of the Plaintiff's property.

55.) Also, the John Doe officers who escorted defendant Mitchell back to the Plaintiff's home and illegally entered therein and conspired with defendant Mitchell to confiscate and illegally seize the defendants personal property, and as such these officers (#5 - #8) are liable to the Plaintiff.

## Tortious Claims against
## Defendant Mitchell

56.) Defendant Mitchell illegally entered the Plaintiff's home and confiscated Personal Property from the Plaintiff, including but not limited to :

A) 2 Family heirlooms in the form of a Gold antique watch and a Gold mens ring;

B) The Plaintiff's Grandmother's necklace;

C) 5 Pairs Silver and Gold Cufflinks;

D) A digital Camera;

E) And the Plaintiff's daughter's gold baby bracelet, with her name ingraved on it.

57.) The Property taken by this defendant have not only monetary Value but also have extreme emotional Value to the Plaintiff and by taking them from the Plaintiff the defendant has not only injured the Plaintiff by the theft of his Property, but has also Cause the Plaintiff Severe emotional distress as well as a whole nost of other Pains and Sufferings.

58.) Defendant Mitchell's actions were intentional, unwarranted and unreasonable, wherein she came to the Plaintiff's home and threatened the Plaintiff with both physical violence and false arrest.

59.) Defendant also harrassed, annoyed, threatened and caused severe emotional distress to be suffered by the Plaintiff along with mental anguish, pain and suffering, as well as outrage, at the extreme and outrageous conduct of defendant Mitchell.

60.) All injuries sustained in this Complaint which are attributable to defendant Mitchell resulted from said defendant's own culpable and deliberate conduct with malice and was a proximate result of the acts and omissions of said defendant.

61.) Plaintiff's claims against defendant Mitchell are not barred in part, by any applicable Statute of limitations, or barred by doctrines of Collateral Estoppel or Res Judicata.

62.) Defendant Mitchell provoked the entire incident alleged against said defendant herein.

63.) Punitive damages are also warranted due to defendant Mitchell's deliberate conduct with malice.

## Relief Sought

64.) As to the defendant City and all defendant Officers named herein, Plaintiff hereby incorporates herein, Paragraphs #55 - #57 of his original Verified Complaint which is attached hereto.

65.) As to defendant Mitchell, Plaintiff requests an Order declaring that the defendant (Mitchell) has Caused both Tortious and Property damage to the Plaintiff.

66.) Plaintiff requests from defendant Mitchell Compensatory damages in the amount of $100,000 U.S.D.

67.) Plaintiff also requests Punitive damages from defendant mitchell in the amount of $100,000 U.S.D. For the defendant's deliberate intentional Conduct with Malice.

I declare under Penalty of Perjury that the foregoing is true and correct.

Signed this 31st day of January, 2013

State of New York )
                  )ss:
County of Bronx   )

Signed _Donnell Baines_

Sworn to before me this 2 day of February 2013

_Marybeth Campfield_
Notary Public.

Marybeth Campfield
Notary Public, State of New York
No. 02CA6171492
Qualified in Nass Cty, Comm Exp 7/23/__

(19)

# EXHIBIT A

# 10 CIV. 9545

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

DONNELL BAINES,
        PLAINTIFF,

        V.

THE CITY of NEW YORK,
NEW YORK POLICE DEPT.,
OFFICER JOHN DOE #1,
OFFICER JOHN DOE #2,
OFFICER JOHN DOE #3,
OFFICER JOHN DOE #4,
        DEFENDANT.

----------------------------------------

42 U.S.C. 1983

VERIFIED COMPLAINT
JURY TRIAL DEMANDED.

## JURISDICTION AND VENUE

1.    This is a civil action authorized by 42 U.S.C. 1983, to redress the deprivation, under color of law, of rights secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. 1331 and 1343 (a) (3) and Southern District of New York is appropiate and supplement jurisdiction under 28 U.S.C. 1367.

2.    This Civil action is brought for the redress of the unlawful entry into the home without a warrant, search and seizure which occured inside the home without a warrant.

3.    Donnell Baines at all times relevant to the Complaint is the Plaintiff in the above encartioned matter and is a resident of the United States.

4.    The City of New York is a municipal corporation organized under the laws of the State of New York and respectfully refer the Court to the New York City Charter and the Administrative Code for a recitation of the relationship between Defendant City and the New York City Police Department (N.Y.R.D.), at all times

relevant to the complaint are municipal government defendants.

5.      Defendant, John Doe #1, N.Y.P.D. uniformed officer at all
times relevant mentioned herein herein violated the Civil Rights
of the Plaintiff under Color of State Law 42 U.S.C. 1983.

6.      Defendant John Doe #2, N.Y.P.D. uniformed officer at all times
relevant mentioned herein violated the Civil Rights of the Plaintiff
under Color of State Law 42 U.S.C. 1983.

7.      Defendant John Doe #3, N.Y.P.D. uniformed officer at all times
relevant mentioned herein violated the Civil Rights of the Plaintiff
under the Color of State Law 42 U.S.C. 1983.

8.      Defendant John Doe #4, N.Y.P.D. uniformed officers at all
times relevant mentioned herein violated the Civil Rights of the
Plaintiff under Color of State Law 42 U.S.C. 1983.

## FACTS OF THE CASE

9.      On December 9, 2009, at or about 7:30 p.m., That day the above
named Defendants appeared at the residence of the plaintiff and
proceeded to "jiggle" the handle to Plaintiff's front door.

10.      Plaintiff, out of fear and curiosity, walked to the front
door and asked "who it was," but, the Defendants did not identify
themselves.

11.      Plaintiff heard the sound of shaking keys and his lock was
unlocked from the outside by the Defendants who quickly pushed their
way into the darkened hallway inside Plaintiff's apartment.

12.      Plaintiff backed away from the door, turned and tried to run
into the open living space of his apartment to escape the intruders,
defendants.

13.      Defendants screamed "freeze or I'll shoot" which made the
plaintiff stop and surrender.

14.      Defendants had their guns drawn and aimed at plaintiff.

15.      Plaintiff was roughly handled by defendants John Doe #1 and
John Doe # 2, who forced plaintiff to lay face down on his stomach,
with his hands behind his head, and plaintiff was made to cross his
feet in a submissive position.

16.    Defendant, John Doe #1, then sat on plaintiffs lower back, removed plaintiff's hands from behind his head, and placed them behind his back in a jerking fashion which caused plaintiff to suffer pain.

17.    Defendant, John Doe #1, then handcuffed the plaintiff, while defendant, John Doe #2, asked the plaintiff, "So you like to beat girls up huh?, what if we beat you up?"

18.    Plaintiff in fear stated that he had done nothing wrong, please don't beat me up," begging defendants John Doe #1 and #2 not to harm him.

19.    Defendant John Doe #1 then got up off the lower back of the plaintiff and then lifted the plaintiff up to a standing position by pulling on the cuffs which caused the Plaintiff substantial pain.

20.    Defendant John Doe #2 made a threatening gesture at this time, in the form of being about to hit the plaintiff, which cause the plaintiff to fear harm at the hands of the Defendants.

21.    Plaintiff jerked backward in fear of being hit and Defendant John Doe #1, still having hold of the cuffs said "See, he's not a man, He's a scared little girl himself.

22.    Defendant John Doe #1 then pulled downward on plaintiff cuffs, at the same time saying "have a seat then little girl," using enough force to cause plaintiff to fall in the center of the floor in a seated position.

23.    Plaintiff feeling fear, began to cry and asked "what did I do?" to which the Defendant John Doe #1 and #2 responded "shut up!" "You know what you did."

24. Plaintiff then stated "I don't know what's going on but I'm cooperating, please don't hurt me anymore."

25. At this time there was no arrest warrant for Plaintiff Baines.

26.    Defendant John Doe #3 entered the plaintiffs apartment at this time and asked "Have you searched him and this place for weapons?"

27.    Defendant John Doe #1 said "No" and at this time defendants John Doe #1 and John Doe #2, and John Doe #3 all began to search specific places in the defendants house.

28.   Defendant John Doe #3 searched the bathroom, Defendant John Doe #2 searched the hall closet and Defendant John Doe #1 searched the main living area.

29.   At this time there was no search warrant for plaintiffs home of 1475 2nd Ave. Apt. #5H N.Y. N.Y.

30.   There was no exigent circumstances which warranted the conduct of the defendants, which was unwarranted and unreasonable.

31.   Upon information and belief, there was no National Crime information Center Data lodged against the plaintiff at the time the defendants unlawfully entered his home and placed him into cuffs.

32.   Defendants, Conducted an unwarranted an unlawful search of plaintiffs home.

33.   Defendants, after securing plaintiff in his own home, without an arrest warrant, began to harass, annoy, threaten, cause pain, injure the plaintiff.

34.   Plaintiff was then taken out of his home and into the hall where he saw defendant John Doe #4 who said upon seeing the plaintiff "Is this the little fuck face who likes to beat on woman?'

35.   Defendant John Doe #4 then made a violent gesture which cause the plaintiff to recoil thinking he would be hit.

36.   All the defendants started laughing at the plaintiff, bringing shame and ridicule to him.

37.   Defendant John Doe #4 then said "get this little faggot out of here."

38.   Plaintiff was led onto the elevator by John Doe #1 and John Doe #2, where John Doe #2 told the Plaintiff "You're lucky she's not my daughter or I'd kill you right here." This statement was made while John Doe #2 was tapping his gun holster.

40.   As a direct and proximate result of the acts and ommissions of defendants, plaintiff suffered emotional distress, mental anguish, and pain and suffering, and was violated in the plaintiff home.

## VIOLATION OF CONSTITUTIONAL RIGHTS
## PURSUANT TO 42 U.S.C. 1983

41.   Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 40.

42.   The intentional, illegal search and host of severe malice violated the rights of the plaintiff guaranted by the Fourth Amendment of the United States Constitution.

43. The Amendments to the United States Constitution and such misconduct constitute a departure from the standards of decency that mark our society.

44.   Defendant City, John Doe #1, John Doe #2, John Doe #3, and John Doe #4 are individually liable and defendant City is liable for tolerating such misconduct.

45.   This policy and practice by defendant City encouraged and cause constitutional violations by the four John Doe Officers, including the violation of plaintiff home, property and physical well being by these four John Doe Officer, described in the foregoing paragraphs.

46.   Defendant City, and Defendant N.Y.P.D. refused to adequately train, direct, supervise, or control the four John Doe defendant so as to prevent the violation of plaintiff's Constitutional Right.

47.   The complaint states a preponderance of facts upon which relief can be granted.

48.   Defendant City, N.Y.P.D., Officer John Doe #1, Officer John Doe #2, Officer John Doe #3, and Officer John Doe #4, violated rights, privileges and immunities under the Constitutional laws of the United States and the State of New York and Subdivisions thereof.

49.   At all times relevant to the acts alleged in the complaint the duties and functions of the municipal defendants was to observe the constitution of the United States and laws of the state of New York, and defendant officers did not act reasonably in the lawful and proper exercise of their discretion and thus are not entitled to qualified immunity under 42 U.S.C. 1983.

50.   At all times mentioned herein defendants violated clearly

established Constitutional and Statutory rights of plaintiff of which a reasonable person would have known 42 U.S.C. 1983.

51.   All injury sustained resulted from the defendants own culpable and deliberate conduct with malice and was a proximate result of the act of the defendant City, the N.Y.P.D., and the four John Doe Officers named herein.

52.   Plaintiff claims are not barred in part, by the applicable statute of limitations, or barred by doctrines of Res Judicata or Collaterral Estoppel:

53.   Defendants provoked all incident.

54.   Punitive damages are warranted due to defendants deliberate conduct with malice.

## RELIEF SOUGHT

55.   Plaintiff's request an order declaring that the defendants have acted in violation of the United States Constitution.

56.   Plaintiff requests compensatory damages in the amount of $ 3,000,000.   DOLLARS.

57.   Plaintiff also request Punitive damages in the amount of $ 4,000,000   Dollars for the defendants deliberate intentional conduct with malice.

Signed this 13ᵗʰ day of December , 2010

D_____ B____
Donnell Baines Plaintiff

I declare under the penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true and correct.

Respectfully Submitted,

D_____ B____
Donnell Baines Plaintiff

December 13, 2010
Dated;

I declare under penalty of perjury that the foregoing is true and correct.

Signed this *2nd* day of Febrvary , 20*13*.

Signature of Plaintiff    *Deep B...*

Inmate Number    349-10-11562

Institution Address    G.M.D.C.

15-15 Hazen Street

East Elmhurst, N.Y. 11370

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this *2nd* day of Febrvary , 20*13*, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: *Deep B...*



Donnell Baines # 349-10-11562.
G.M.D.C.
15-15 Hazen Street.
EastElmhurst, N.Y., 11370.

United States District Court
Southern District Of New York.
Daniel Patrick Moynihan United States Courthouse.
Pro Se Office.
500 Pearl Street, Room # 230.
New York, N.Y., 10007