```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
DONNELL BAINES,                                                         :
                                                                        :
                                    Plaintiff,                          :    10 Civ. 9545 (JMF)
                                                                        :
                -v-                                                     :    MEMORANDUM OPINION
                                                                        :    & ORDER
THE CITY OF NEW YORK et al.,                                            :
                                                                        :
                                    Defendants.                         :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/19/2014

JESSE M. FURMAN, United States District Judge:

Plaintiff Donnell Baines sues the City of New York (the "City"), the New York City Police Department ("NYPD"), several NYPD officers, and Kimberly Crystal Mitchell (together with the NYPD officers, the "individual Defendants"). (Am. Compl. (Docket No. 29)). The Honorable Richard J. Holwell, to whom this case was originally assigned, previously dismissed all claims against the NYPD on the ground that the NYPD is not a suable entity. (Docket No. 9). To date, there is no indication in the record that Plaintiff has served any of the individual Defendants, and they have not appeared in the case. Thus, the only Defendant that has appeared and remains in the case is the City, which now moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings. (Docket No. 39). For the reasons discussed below, the City's motion is GRANTED.

## BACKGROUND

The following facts — taken from the Amended Complaint, documents referenced therein, and documents in related legal proceedings of which the Court can take judicial notice — are assumed to be true and all factual inferences are drawn in Plaintiff's favor. *See, e.g.*,

*Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006).

This suit arises out of events that took place in early December 2009. (Am. Compl. ¶¶ 14-19). On December 7, 2009, Plaintiff was involved — he alleges only peripherally — in a physical altercation at his residence involving two female acquaintances, including individual Defendant Mitchell who had previously lived with Plaintiff. (Am. Compl. ¶¶ 7, 14). (Plaintiff alleges that Mitchell ceased residing at his apartment in October 2009 (Am. Compl. ¶ 7), but the allegations in the Amended Complaint suggest that Mitchell believed that she continued to reside at Plaintiff's apartment after that point (*see* Am. Compl. ¶¶ 24-28). Whether she did or not is irrelevant for purposes of this motion.) The next day, Plaintiff received an allegedly threatening telephone call from Mitchell. (Am. Compl. ¶ 17). Plaintiff also alleges that Mitchell visited his home, accompanied by "male acquaintances," but that Plaintiff denied them entry and threatened to call the police if they did not leave. (Am. Compl. ¶¶ 19-20).

That evening, Plaintiff received a phone call from Mitchell and an unidentified number of NYPD officers. (Am. Compl. ¶ 23). During the call, Plaintiff learned that Mitchell wished to come to his apartment, accompanied this time by the officers, to recover belongings she claimed she had left at Plaintiff's apartment. (Am. Compl. ¶ 24). Plaintiff told the officers that Mitchell no longer had any belongings at his apartment. (*Id.*). When the police officers told Plaintiff that Mitchell had told them she lived in his apartment, he denied the claim and told them that although Mitchell had lived there in the past, she no longer did. (Am. Compl. ¶ 25). Plaintiff alleges that a police officer said that Mitchell still had keys to access the apartment and that he heard Mitchell tell the police officers that although she no longer lived at Plaintiff's apartment,

2

some of her belongings remained there. (Am. Compl. ¶¶ 26, 28). Mitchell also told the officers that Plaintiff had assaulted her. (Am. Compl. ¶ 28).[1]

Around 7:30 p.m. that same evening, Mitchell arrived at Plaintiff's apartment with the Defendant NYPD officers. (Am. Compl. ¶ 29 (incorporating by reference paragraphs 9 and 10 of the original Complaint); Compl. (Docket No. 2) ¶ 9). The individual Defendants "jiggled" the handle to the front door, which drew Plaintiff's attention. (Compl. ¶¶ 9-10). Plaintiff then yelled through the door, ordering Mitchell to leave. (Am. Compl. ¶ 30). Despite those warnings, Plaintiff used her set of keys to the apartment to open the front door. (Am. Compl. ¶¶ 31-32). Once the door was open, the individual Defendants "quickly pushed their way into the darkened hallway of the Plaintiff's apartment." (Am. Compl. ¶ 31).

According to Plaintiff, matters then escalated quickly. The NYPD officers drew their firearms. (Am. Compl. ¶ 33 (incorporating by reference paragraphs 13 through 26 of the Complaint); Compl. ¶¶ 13-14). Plaintiff yielded and was made to lie down on his stomach, with his hands behind his head and his feet crossed "in a submissive position." (Compl. ¶ 15). One NYPD officer "then sat on [P]laintiff's lower back, removed [P]laintiff's hands from behind his head, and placed them behind his back in a jerking fashion which caused [P]laintiff to suffer pain." (Compl. ¶ 16). At the same time, another officer allegedly asked: "So you like to beat girls up[,] huh? [W]hat if we beat you up?" (Compl. ¶ 17). Once Plaintiff was handcuffed, the police lifted him up to a standing position by the handcuffs, "which caused the Plaintiff substantial pain." (Compl. ¶ 19). The officers then sat Plaintiff down in the same manner. (Compl. ¶ 22).

---

[1] Although not relied on for purposes of deciding this motion, contemporary police reports confirm that Mitchell told police that Plaintiff had beaten her and threatened her life, and that she continued to reside at Plaintiff's apartment. (Moe Decl. (Docket No. 40), Exs. B-C).

Plaintiff alleges that, although he told the officers that they did not have permission to search his home and that Mitchell no longer lived in the apartment, they nevertheless proceeded to search the apartment in reliance on Mitchell's consent. (Am. Compl. ¶¶ 35-36). Plaintiff avers that, during their search, the officers "ransack[ed]" his apartment "with sheer disregard to the value and/or importance of the Plaintiff's personal property." (Am. Compl. ¶ 37). At the conclusion of the search, Plaintiff was arrested and taken to the 19th Precinct (Am. Compl. ¶ 41), where he was charged with misdemeanor assault against Mitchell (Am. Compl. ¶ 42). At or about the same time, Plaintiff learned that the police would be returning to his apartment with Mitchell to recover her belongings. (Am. Compl. ¶¶ 41, 44).

On December 17, 2010, Plaintiff filed the instant action, alleging among other things that the City and the NYPD Defendants violated his Fourth Amendment rights. (Am. Compl. ¶¶ 45-55). The case was stayed during the pendency of Plaintiff's criminal proceedings, but on October 24, 2012, Plaintiff was convicted by a jury of the assault charge arising out of the December 2009 events. (Moe Decl., Ex. F). In addition, he was convicted of, among other things, first-degree rape, sex trafficking, and promoting prostitution. (*Id.*). According to the New York State Department of Corrections and Community Supervision, Plaintiff's aggregate minimum prison sentence is 42 years, 10 months, and 4 days — meaning, apparently, that his earliest possible release date is May 13, 2053 (Def.'s Mem. (Docket No. 41) 5) — and he is currently incarcerated at Five Points Correctional Facility. *See Williams v. City of New York*, No. 07 Civ. 3764 (RJS), 2008 WL 3247813, at *2 & n.3 (S.D.N.Y. Aug. 7, 2008) (taking judicial notice of the plaintiff's incarceration based on the inmate lookup website of the New York State Department of Corrections and Community Supervision).

4

**LEGAL STANDARD**

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as the one governing a motion to dismiss a complaint under Rule 12(b)(6). *See, e.g.*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *Ramrattan v. Schriro*, 11 Civ. 3749 (JMF), 2013 WL 3009908, at *1 (S.D.N.Y. June 17, 2013). Thus, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying that standard, a court must assume all of Plaintiff's "factual allegations to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Furthermore, a court is "obligated to construe a *pro se* complaint liberally," *id.* at 72 — that is, to interpret its allegations "to raise the strongest arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).

**DISCUSSION**

Although the City raises various arguments in support of its motion for judgment on the pleadings, the Court need only address one: its contention that Plaintiff's allegations regarding municipal liability are insufficient to state a claim under the standards announced by *Monell v. Department of Social Services*, 436 U.S. 658, 683 (1978), and subsequent municipal-liability cases. (Def.'s Mem. 7-9). Plaintiff alleges that the City is liable to him because the City was negligent in its training of the NYPD officers "as to what specifically should be done in the instance where an officer is confronted with conflicting or ambiguous facts as to who has true authority over a residence." (Am. Compl. ¶ 48). He further alleges that the City should have better trained the officers by giving them guidelines for determining when they have constitutional authority to enter and search a home. (Am. Compl. ¶¶ 49-52). On the basis of

these allegations and those recited above, Plaintiff argues that his claim for municipal liability is facially plausible. (Pl.'s Mem. (Docket No. 44) 9). Specifically, Plaintiff argues that the Court may draw the inference that the City had a municipal policy of negligent training. (*Id.*).

Reading Plaintiff's allegations as liberally as they can be construed, the Amended Complaint fails to a state a claim for municipal liability. It is settled law in this Circuit that a single incident cannot ground a claim for municipal liability where the incident involves only actors below the policy-making level. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Further, although courts may draw the inference of an unconstitutional policy based on a negligent failure to train, *see id.*, a plaintiff may not simply allege the existence of a negligent training program in conclusory fashion, *see, e.g.*, *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999). Instead, absent extremely severe circumstances, a plaintiff must allege facts — other than those giving rise to individual liability — supporting an inference that the municipality has an unconstitutional policy. *Id.* Put differently, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *accord Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22 (2d Cir. 2012) (summary order). Here, as Plaintiff has alleged nothing more than the existence of a municipal policy, his allegations are plainly insufficient to survive the City's motion. Accordingly, all claims against the City are dismissed.

## CONCLUSION

For the foregoing reasons, the City's motion is GRANTED, and all claims against the City are dismissed. Furthermore, as noted, there is no indication in the record that any of the

individual Defendants has been served — even though the Complaint was filed well over 120 days ago. Accordingly, it is hereby ORDERED that, **within three weeks**, Plaintiff shall communicate with the Court, in writing, as to why Plaintiff has failed to serve the summons and Complaint on the individual Defendants within the 120 days prescribed by Rule 4(m) of the Federal Rules of Civil Procedure, or, if Plaintiff believes that the individual Defendants have been served, when and in what manner such service was made.

IT IS FURTHER ORDERED that if the Court does not receive any communication from Plaintiff within three weeks, showing good cause why such service was not made within the 120 days, the Court will dismiss the case without further notice.

The Clerk of the Court is directed to terminate Docket No. 39 and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

SO ORDERED.

Dated: March 19, 2014
    New York, New York

_____
JESSE M. FURMAN
United States District Judge