UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
DONNELL BAINES,
:
                             Plaintiff,
:
              -v-
:
THE CITY OF NEW YORK, et al.,
:
                          Defendants.
:
------------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #:_____
DATE FILED:  06/08/2015

10-CV-9545 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

      Plaintiff Donnell Baines, who is proceeding *pro se*, was convicted in New York State court of first-degree rape, sex trafficking, and promoting prostitution, and sentenced to more than forty years in prison. In this case, he sues various officers from the New York City Police Department (the "Officer Defendants") and Kimberly Mitchell, a woman he was convicted of assaulting (collectively, "Defendants"), pursuant to Title 42, United States Code, Section 1983. Against the Officer Defendants, Plaintiff appears to assert claims for unlawful entry, excessive force, and unreasonable search in violation of the Fourth and Fourteenth Amendments, as well as selective enforcement of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment. In addition, against all Defendants, he asserts a claim for deprivation of property in violation of the Due Process Clause of the Fourteenth Amendment and for conspiracy to violate his civil rights. The Officer Defendants now move to dismiss all claims except for the excessive-force claim. (*See* Defs.' Mem. Law Supp. Mot. To Dismiss Second Am. Compl. Pursuant Fed.

R. Civ. P. 12(b)(6) (Docket No. 98) ("Defs.' Mem.") 2 & n.2).[1]  For the reasons that follow, the

motion is granted in part and denied in part.  Additionally, although Plaintiff has not yet served

Mitchell, the Court *sua sponte* dismisses all claims against her.

## BACKGROUND

Before describing the relevant background, the Court must address two preliminary

matters.  First, the Officer Defendants suggest that the Court should disregard some allegations

in the Second Amended Complaint ("SAC"), on the ground that they "directly contradict" the

facts pleaded in Plaintiff's earlier complaints.  (Defs.' Mem. 13-14, 16-17).  It is true that a Court

may disregard the factual allegations in an amended complaint where a plaintiff "blatantly

changes" his story to "directly contradict[]" his earlier pleadings.  *E.g.*, *Colliton v. Cravath,*

*Swaine & Moore LLP*, No. 08-CV-400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24,

2008) (internal quotation marks omitted), *aff'd sub nom. Colliton v. Cravath, Swain & Moore*

*LLP*, 356 F. App'x 535 (2d Cir. 2009); *see, e.g.*, *Wallace v. NYC Dep't of Corr.*, No. 95-CV-

4404, 1996 WL 586797, at *1-2 (E.D.N.Y. Oct. 9, 1996) (disregarding the assertion in an

amended complaint that an action was taken pursuant to an official policy because the original

complaint contended that the action was an aberration from that policy).  However, "the more

usual and benevolent option is to accept the superseded pleadings but allow the factfinder to

consider the earlier pleadings as admissions in due course."  *Barris v. Hamilton*, No. 96-CV-

9541 (DAB), 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999); *see also Kermanshah v.*

*Kermanshah*, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008) (noting that courts typically disregard

subsequent pleadings only where they are "blatant" or "directly contradictory" as opposed to

---

[1]     This is the second motion to dismiss filed in this case.  The Court previously granted a
motion to dismiss all claims against the City of New York.  *See Baines v. City of New York*, No.
10-CV-9545 (JMF), 2014 WL 1087973 (S.D.N.Y. Mar. 19, 2014).

merely "inconsistent" (internal quotation marks omitted)).  Here, the Court will follow the latter course.  For one thing, the discrepancies between the SAC and Plaintiff's earlier pleadings are not the sort of "blatant[] . . . contradict[ions]" that have caused other courts to disregard allegations in amended pleadings.  *Colliton*, 2008 WL 4386764, at *6.  For another, Plaintiff is proceeding *pro se*, so his pleadings "'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Thus, the better option is to treat the SAC as the sole operative pleading for purposes of this motion, without prejudice to the Officer Defendants arguing "in due course" that the earlier pleadings should be treated as "admissions."  *Barris*, 1999 WL 311813, at *2.

Second, in moving to dismiss, the Officer Defendants rely on police reports describing Mitchell's allegations that Plaintiff assaulted her.  (*E.g.* Defs.' Mem. 2, 3, 14, 22-23 (citing Decl. Matthew Bridge Supp. Defs.' Partial Mot. To Dismiss Second Am. Compl. (Docket No. 97), Exs. B & C)).  On a motion to dismiss, however, a court may consider only materials of which it may take judicial notice or that were attached to the complaint or incorporated by reference.  *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003).  In this case, the police reports at issue were neither attached as exhibits to, nor referenced in, the SAC, and Plaintiff's passing mention of Mitchell's assault allegations (*see* SAC ¶ 56), which were detailed in one of the police reports, is insufficient to incorporate it into the SAC such that it may be considered on a motion to dismiss.  *See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (holding that limited references are insufficient to incorporate documents or exhibits into the complaint).  Thus, the Court may not, and does not, consider the

reports in deciding the Officer Defendants' motion.  *Avalos v. IAC/Interactivecorp.*, No. 13-CV-8351 (JMF), 2014 WL 5493242, at *3 n.1 (S.D.N.Y. Oct. 30, 2014).

Accordingly, the following facts, presumed to be true for purposes of this motion, are taken from the SAC and public documents of which the Court may take judicial notice.  *See Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013); *see also McNamee v. Clemens*, 762 F. Supp. 2d 584, 592 n.1 (E.D.N.Y. 2011) (noting that a court may take judicial notice of an indictment, but not for the truth of the allegations contained therein); *Lowery v. Home Depot*, No. 13-CV-3957 (JPO), 2014 WL 5151402, at *1 n.2 (S.D.N.Y. Oct. 14, 2014) (noting that a court may take judicial notice of a verdict in a criminal trial); *Williams v. City of N.Y.*, No. 07-CV-3764 (RJS), 2008 WL 3247813, at *2 & n.3 (S.D.N.Y. Aug. 7, 2008) (taking judicial notice of the plaintiff's incarceration and the term of his sentence based on the inmate lookup website of the New York State Department of Corrections and Community Supervision).  Plaintiff's claims all arise from interactions involving him and Mitchell, who lived with (and, although not expressly alleged in the SAC, was presumably romantically involved with) Plaintiff for about six months beginning in April 2009.  (SAC ¶¶ 13-14, 17).  Plaintiff alleges that, on October 1, 2009, Mitchell moved out of Plaintiff's apartment.  (*Id.* ¶¶ 15, 17).  A few weeks later, on October 18, 2009, Mitchell called Plaintiff to tell him that she was outside his apartment, accompanied by multiple police officers, and asked permission to enter and retrieve her belongings.  (*Id.* ¶¶ 18-20).  Plaintiff consented, at which point Mitchell and the officers removed all her remaining possessions from his apartment.  (*Id.* ¶¶ 20-24).

On October 21, 2009, Mitchell called Plaintiff and asked permission to come over "for a 'social visit.'"  (*Id.* ¶ 27).  Plaintiff agreed, but when Mitchell was in his apartment, he told her that she could not stay in the apartment when he was not there and that if she wanted to come

4

over "for a 'social visit,'" she "would be required to call well in advance of coming over to seek Plaintiff's permission." (*Id.* ¶ 28). From that date to December 7, 2009, Mitchell was "an 'infrequent visitor'" to Plaintiff's apartment, "knowing full well during this entire period that she had no authority over Plaintiff's residence." (*Id.* ¶ 30). On December 7, 2009, for reasons that are not clear, Mitchell was at Plaintiff's apartment and allegedly got into a physical fight with Plaintiff's then-girlfriend. (*Id.* ¶¶ 30-31). Plaintiff kicked Mitchell out of his apartment and told her not to return; as she was leaving, Mitchell told Plaintiff that she was going to have him and his then-girlfriend arrested. (*Id.* ¶¶ 32-33). The next afternoon, Mitchell and two men associated with Mitchell threatened Plaintiff multiple times, both on the telephone and in person. (*Id.* ¶¶ 34-39). Among other things, Mitchell "threatened Plaintiff's safety," telling him that she was going to arrange to have him beaten up and robbed; she also told Plaintiff that she was going to lie to the police, by informing them "that it was Plaintiff who assaulted her, thereby having Plaintiff arrested." (*Id.* ¶ 34).

On the evening of December 8, 2009, Plaintiff received a call from Mitchell, who was outside his apartment and requested his permission to enter the apartment to retrieve her possessions (despite the fact that she had allegedly removed all of her possessions in October). (*Id.* ¶¶ 44-46). Mitchell was apparently accompanied by at least some of the same police officers — the Officer Defendants here — who had escorted her to remove her belongings on October 18, 2009. (*Id.* ¶ 47). Plaintiff refused, telling Mitchell and the accompanying officers that she no longer had any possessions in his apartment. (*Id.* ¶ 46). One of the officers — Defendant Brian White — then took the phone and told Plaintiff that Mitchell had a copy of the keys to the apartment and had told the police that she lived in the apartment and that she and Plaintiff were in a romantic relationship. (*Id.* ¶¶ 49, 51). Plaintiff denied that he and Mitchell were in a

5

relationship and asked the officer to arrest Mitchell for possessing his keys, asserting that they were stolen property. (*Id.* ¶ 51). Over the phone, Plaintiff then heard Officer White ask Mitchell whether she still lived in the apartment, to which Mitchell responded "No, not any more [sic], but my belongings are up there and he assaulted me." (*Id.* ¶ 56).

Shortly thereafter, Plaintiff heard his doorknob rattle and, upon realizing that Defendants were at the door, again refused to consent to their entry into the apartment and threatened to call the police if they did not leave. (*Id.* ¶¶ 64, 66-67). The Officer Defendants then used the keys to open the door and forced their way into Plaintiff's apartment, whereupon one of the Officers immediately placed Plaintiff in handcuffs. (*Id.* ¶¶ 68-71). Plaintiff alleges that the Officers pinned him down and handcuffed him in "a jerking fashion, which caused Plaintiff to suffer pain." (*Id.* ¶¶ 72-73). They then pulled him to his feet by the handcuffs and twisted his arms behind his back, causing a "loud 'popping'" sound in his shoulder. (*Id.* ¶¶ 75-76). Shortly thereafter, an Officer told him to have a seat, and pulled downward on the cuffs "with enough force to slam the Plaintiff down on the floor," causing injuries to his back and thigh. (*Id.* ¶ 81).

After Plaintiff was detained, another officer entered the room and asked whether the officers had searched Plaintiff's apartment for weapons. (*Id.* ¶ 84). They reported that they had not. (*Id.*). When Plaintiff protested that the officers did not have permission to search his apartment, one of the officers then went out to the hallway where Mitchell was waiting and asked for her permission to search the apartment, which she granted. (*Id.* ¶¶ 86-88). According to Plaintiff, the Officer Defendants then "'ransack[ed]'" the apartment, searching it from "'top-to-bottom.'" (*Id.* ¶¶ 91-92).

Following the search, Plaintiff was taken from his apartment to the local police station, where he was placed in a holding cell. (*Id.* ¶¶ 101, 103, 106). One of the Defendants, Officer

Robert O'Donoghue, informed Plaintiff that other officers would be escorting Mitchell back to his apartment so that she could retrieve her belongings.  (*Id.* ¶ 109).  When Plaintiff asked Officer O'Donoghue to intercede to stop Mitchell from taking his property, the officer told Plaintiff that there was nothing he could do and that Plaintiff's only remedy was to bring a civil suit against Mitchell.  (*Id.* ¶¶ 111-12).  Plaintiff was released from custody later that evening; upon returning to his apartment, he found that several valuables had been taken from his apartment.  (*Id.* ¶¶ 114-15).

On November 10, 2010, nearly a year after the events at issue in this case, Plaintiff was indicted on charges, including first-degree rape, sex trafficking, and assault, stemming from his interactions with Mitchell in December 2009.  (*See* Bridge Decl., Ex. H).  Shortly thereafter, on December 17, 2010, Plaintiff filed the instant action.  (Compl. (Docket No. 2)).  The case was stayed during the pendency of Plaintiff's criminal proceedings, which culminated, on October 24, 2012, with Plaintiff's conviction by a jury of, among other things, first-degree rape, sex trafficking, promoting prostitution, and assault arising from the December 2009 events.  (Bridge Decl. ¶ 8; *id.*, Ex. F; *see* Docket No. 24).  According to the New York State Department of Corrections and Community Supervision, Plaintiff's aggregate minimum prison sentence for those convictions is forty-two years, ten months, and four days — meaning that his earliest possible release date is May 13, 2053.  *See Inmate Population Information Search*, New York State Department of Corrections and Community Supervision Inmate Information, http://nysdoccslookup.doccs.ny.gov/ (last visited June 8, 2015).  He is currently incarcerated at Five Points Correctional Facility.  (*Id.*).

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels or conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Here, because Plaintiff is proceeding *pro se*, his Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted). Nonetheless, a *pro se* litigant must still state a plausible claim for relief. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Thus, the Court's "'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61).

## DISCUSSION

Plaintiff alleges that the Officer Defendants committed three categories of constitutional torts.[2]  First, he contends that they violated his Fourth Amendment rights by unreasonably entering and searching his apartment without his consent.  Second, he asserts that the Officer Defendants — and Mitchell — violated his due process rights by taking his property.  And third, he avers that the Officer Defendants violated his equal protection rights by arresting him and not arresting Mitchell.  In addition, he claims that the Officer Defendants and Mitchell conspired to deprive him of his constitutional rights.  The Officer Defendants argue that all claims against them should be dismissed, either on the ground that Plaintiff fails to state a claim or that they are entitled to qualified immunity.  The Court considers each category of Plaintiff's claims in turn.

### A.    The Initial Entry

The Court begins with Plaintiff's claim that the Officer Defendants' initial entry into his apartment on December 8, 2009, violated his rights under the Fourth Amendment.  (SAC ¶¶ 67-68; Pl.'s Mem. 7-20).  "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable subject

---

[2]      Plaintiff in his memorandum acknowledges that he is not asserting claims for "malicious prosecution, false imprisonment, or any other New York state law claims."  (Pl.'s Mem. Law Opp'n Defs.' Mot. To Dismiss Second Am. Compl. Pursuant Fed. R. Civ. P. 12(b)(6) (Docket No. 103) ("Pl.'s Mem.") 6).  In addition, although he does not squarely renounce a claim for false arrest, he appears to have abandoned that claim as well.  In any case, Plaintiff's conviction, which he concedes has not been overturned (*id.*), precludes any claim for malicious prosecution, false imprisonment, or false arrest.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Poventud v. City of N.Y.*, 750 F.3d 121, 130-31 (2d Cir. 2014) (en banc); *Magnotta v. Putnam Cnty. Sheriff*, 13-CV-2752 (GBD) (GWG), 2014 WL 705281, at *5 (S.D.N.Y. Feb. 24, 2014) ("The common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested because where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause." (internal quotation marks omitted)).

only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is an entry or search that is performed with the consent of a resident or of "a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *see Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (noting that "one jealously and carefully drawn exception [to the warrant requirement] recognizes the validity of searches with the voluntary consent of an individual possessing authority" (internal quotation marks and citations omitted)).

A third party has authority to consent to a search "'if two prongs are present: first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access.'" *United States v. McGee*, 564 F.3d 136, 139-40 (2d Cir. 2009) (quoting *United States v. Davis*, 967 F.2d 84, 87 (2d Cir. 1992)). Additionally, "even if a third party lacks actual authority to consent to a search of a particular area, he still may have apparent authority to consent to the search." *Moore v. Andreno*, 505 F.3d 203, 209 (2d Cir. 2007). A third party has apparent authority when "the facts available to the officer[s] . . . [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriguez*, 497 U.S. at 188 (internal quotation marks omitted). Significantly, however, a party — whether possessing actual authority or apparent authority — cannot authorize a search as to a physically present and objecting tenant. *See Randolph*, 547 U.S. at 120; *accord Moore*, 505 F.3d at 209. That is, if two people with common authority over a property are present and one consents to a search, but the other immediately objects, the search is unreasonable as to the objecting party. *See Randolph*, 547 U.S. at 120.

Applying those principles here, Plaintiff plainly states a valid Fourth Amendment claim with respect to the Officers' initial entry into his apartment.  Plaintiff alleges that he was physically present at the scene and expressly refused to allow the Officer Defendants to enter his apartment.  (SAC ¶¶ 66-67).  If those allegations are true, and the Court is required to assume they are, then the Officer Defendants' initial entrance violated the Fourth Amendment "as to him," *Randolph*, 547 U.S. at 120, regardless of whether Mitchell consented (Pl.'s Mem. 13). That is, his "refusal of consent to search abrogated the consent given by [Mitchell]," and the SAC thus states a plausible Fourth Amendment claim, at least for the purposes of the Officer Defendants' motion to dismiss.  *United States v. Andino*, 768 F.3d 94, 100 n.5 (2d Cir. 2014); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 243 n.33 (E.D.N.Y. 2010).

The Officer Defendants do not seriously argue otherwise.  Instead, they argue that they are entitled to qualified immunity because a reasonable officer in their positions could have believed that he was entitled to enter the apartment over Plaintiff's objections to protect Mitchell, the alleged victim of domestic violence.  (Defs.' Mem. 11-15; Defs.' Reply Mem. Law Further Supp. Partial Mot. To Dismiss Second Am. Compl. (Docket No. 106) ("Defs.' Reply Mem.") 2-6).  Qualified immunity shields government officials from civil suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To qualify as "clearly established," a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Reichle v. Howards*, — U.S. —, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks omitted); *see Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).  Put another way, existing precedent of the Supreme Court and Second Circuit "must have placed the . . . constitutional question . . . beyond debate."  *Plumhoff*

*v. Rickard*, — U.S. —, 134 S. Ct. 2012, 2023 (2014) (internal quotation marks omitted).  The

inquiry "must be undertaken in light of the specific context of the case, not as a broad general

proposition."  *DiStiso v. Cook*, 691 F.3d 226, 229 (2d Cir. 2012) (internal quotation marks

omitted).  Further, in the Rule 12(b)(6) context, the facts supporting the defense of qualified

immunity must appear on the face of the complaint; even then, a motion to dismiss may be

granted only if the plaintiff fails to plausibly allege a claim for relief.  *See, e.g.*, *Looney v. Black*,

702 F.3d 701, 710 (2d Cir. 2012); *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

In this case, the Officer Defendants' arguments rely on *dicta* in *Randolph*, the Supreme

Court's decision holding that a search conducted on the basis of a tenant's consent is

unreasonable as to a physically present and objecting co-tenant.  Responding to criticism from

the dissent that that holding would jeopardize the victims of domestic violence, the Court stated

that its decision

> ha[d] no bearing on the capacity of the police to protect domestic victims . . . No
> question has been raised, or reasonably could be, about the authority of the police
> to enter a dwelling to protect a resident from domestic violence; so long as they
> have good reason to believe such a threat exists, it would be silly to suggest that
> the police would commit a tort by entering, say, to give a complaining tenant the
> opportunity to collect belongings and get out safely, or to determine whether
> violence (or threat of violence) has just occurred or is about to (or soon will)
> occur, however much a spouse or other co-tenant objected . . .  The undoubted
> right of the police to enter in order to protect a victim, however, has nothing to do
> with the question in this case, whether a search with the consent of one co-tenant
> is good against another, standing at the door and expressly refusing consent.

*Randolph*, 547 U.S. at 118-19.  Relying on that passage, the Officer Defendants argue that a

reasonable officer in their positions might have believed that he or she was authorized to enter

Plaintiff's apartment to accompany Mitchell.  (Defs.' Mem. 11-15).[3]

---

[3]      The Officer Defendants also contend that a reasonable officer could have understood
N.Y. C.P.L. 530.11(6), which requires that the police inform a domestic violence victim that he
or she is entitled to police assistance in retrieving his or her "essential personal effects" to
sanction their entrance into Plaintiff's apartment.  (Defs.' Mem. 14).  Their argument is not

The Officer Defendants' argument is unpersuasive.[4]  There is nothing in *Randolph* that

suggests that law enforcement officers may enter a private residence over the objection of a

physically present resident simply because they are accompanying an assault victim.  The

passage at issue expressly concerned "the authority of the police to enter a dwelling to protect *a*

*resident* from domestic violence."  *Randolph*, 547 U.S. at 118 (emphasis added).  And the

Court's confidence that its holding would not jeopardize victims of domestic violence was based

on its assumptions that most victims would have *actual* authority to authorize an officer's

entrance and search or that exigent circumstances would authorize the officers' entry — if not

both.  *See, e.g.*, *id.* at 118 (stating that "it would be silly to suggest that the police would commit

a tort by entering, say, to give a complaining *tenant* the opportunity to collect belongings and get

out safely, or to determine whether violence (or threat of violence) has just occurred or is about

to (or soon will) occur, however much a spouse or *other co-tenant* objected." (emphasis added));

*id* (noting that "[n]o question has been raised, or reasonably could be, about the authority of the

police to enter a dwelling to protect a resident from domestic violence . . . *so long as they have*

*good reason to believe such a threat exists*." (emphasis added)).  In other words, despite the

Officer Defendants' suggestions to the contrary, *Randolph* did not establish a broad new

---

persuasive.  As discussed below, the provision merely requires that the police provide a victim
with notice; it does not authorize any affirmative steps by the police to retrieve a victim's
personal effects .  Moreover, a state statute obviously cannot override the protections of the
Fourth Amendment.  Accordingly, no reasonable officer could have understood the provision to
carve out an exception to the Fourth Amendment.

[4]      The Officer Defendants' argument is premised on Mitchell being a victim of domestic
abuse.  Given Plaintiff's criminal conviction, that premise appears to be well founded.  But, on a
motion to dismiss, the Court may not consider Plaintiff's conviction for the truth of any matters
asserted, and the only allegation relating to domestic violence in the SAC is Mitchell's statement
to Officer White that Plaintiff had previously assaulted her.  (SAC ¶ 56).  Nevertheless, for the
purposes of resolving this motion, the Court assumes that Mitchell was the victim of domestic
abuse — and that the Officer Defendants had reason to believe that she was such a victim.

domestic-violence exception to the Fourth Amendment prohibition on warrantless searches. That is, nothing in *Randolph* suggests that an officer may enter a residence to accompany a party who does not have actual or apparent common authority over that residence, at least absent exigent circumstances. *See, e.g.*, *Ryburn v. Huff*, — U.S. —, 132 S. Ct. 987, 990 (2012) (stating that a "reasonable police officer could read [the line of cases culminating in *Randolph*] to mean that the Fourth Amendment permits an officer to enter a residence if the officer has a reasonable basis for concluding that there is an *imminent threat* of violence." (emphasis added)); *see also United States v. Sikut*, 488 F. Supp. 2d 291, 307 (W.D.N.Y. 2007) (requiring exigent circumstances to justify a police officer's entrance into a home to protect a victim of domestic violence); *cf. Khalil v. Moore*, No. 10-CV-859 (JCH), 2011 WL 5910088, at *3-4 (D. Conn. Nov. 28, 2011) (upholding a search where a victim of domestic violence had *actual* authority to consent).

Even if the *dicta* in *Randolph* could be reasonably read more narrowly — to suggest that an officer may enter a residence, without regard for exigent circumstances, so long as they are accompanying a domestic abuse victim with actual or apparent authority to consent — it would not aid the Officer Defendants here. Treating the allegations in the SAC as true, as the Court must, there is no basis to conclude that Mitchell had actual or apparent authority to consent to the entry and search of Plaintiff's apartment. In arguing otherwise, the Officer Defendants point to the fact that Mitchell possessed keys to the apartment. (Defs.' Mem. 13). But while the possession of keys *can* support a finding of apparent authority in some circumstances, *see, e.g.*, *Krug v. Cnty. of Rennselaer*, No. 04-CV-0640 (TJM) (DRH), 2010 WL 3937319, at *5 (N.D.N.Y. Oct. 5, 2010) (concluding that the possession of keys to a van was sufficient to create apparent authority to consent to a search of the van), it does not necessarily justify such a

14

finding, *see, e.g.*, *Stoner v. California*, 376 U.S. 483, 485, 490 (1964) (holding that a hotel manager cannot consent to a search of the room of a guest even though a manager possessed a key to that room); *Chapman v. United States*, 365 U.S. 610 (1961) (holding that a landlord could not authorize the search of a rented house). Further, in this case, Plaintiff alleges that he explicitly told the Officer Defendants that Mitchell no longer lived in the apartment and that *she* explicitly confirmed that information. (SAC ¶¶ 49, 56; *see also id.* ¶ 47 (stating that at least one of the officers present on the night of December 8, 2009, was also present when Mitchell moved her possessions out of the apartment on October 18, 2009, and therefore knew that she no longer lived there)). In light of those allegations, it cannot be said that an officer "of reasonable caution" would have believed that Mitchell "had authority over the premises." *Rodriguez*, 497 U.S. at 188 (internal quotation marks omitted); *see also Moore*, 505 F.3d at 206, 210 (concluding that a woman who explicitly represented that she did not have actual authority over part of the residence could not authorize a search, even though she had removed the locks to that part of the residence).

The Officer Defendants contend that it was reasonable for them to rely on Mitchell's earlier statement that she lived in Plaintiff's apartment and to disregard her later statements, made in the presence of her abuser, that she no longer lived there. (Defs.' Mem. 13; Defs.' Reply Mem. 2-3). But there is nothing in the SAC that would explain Mitchell's subsequent recantation of her statement that she lived in the apartment; she was not directly facing Plaintiff and she was accompanied by several officers, mitigating any concerns she might have had about her immediate safety. It may well be the case that the Officer Defendants can, in a subsequent stage of the case, show that it was reasonable for them to rely only on her earlier statement and discount her later one (or that the Officer Defendants had some other valid basis to believe that

they had authority to enter the apartment), but the Court cannot reach that conclusion at this stage of the case.  Accordingly, for the purposes of this motion, the Court must conclude that the Officer Defendants' initial entry into Plaintiff's apartment "constitute[d] a violation of clearly established law, and no objectively reasonable public official could have thought otherwise." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015).  The Officer Defendants' motion to dismiss Plaintiff's claim based on the initial entry into his apartment is therefore DENIED.

**B.     The Search**

Next, Plaintiff contends that, once inside his apartment, the Officer Defendants also violated the Fourth Amendment by conducting a search far in excess of the limited protective sweep authorized by *Maryland v. Buie*, 494 U.S. 325 (1990).  (Pl.'s Mem. 18-19).  In *Buie*, the Court concluded that police officers "could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334.  But a *Buie* search is appropriate only "where entry was made by police pursuant to lawful process," *United States v. Hassock*, 631 F.3d 79, 85 (2d Cir. 2011) (internal quotation marks omitted), "such as an order permitting or directing [a police] officer to enter for the purpose of protecting a third party," *United States v. Miller*, 430 F.3d 93, 98 (2d Cir. 2005); *see also United States v. Fadul*, 16 F. Supp. 3d 270, 282-86 (S.D.N.Y. 2014) (discussing the Second Circuit's application of *Buie* to warrantless searches performed with an inhabitant's consent).  Moreover, as the *Buie* Court made clear, "a 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person may be hiding." 494 U.S. at 327.

Plaintiff's search claims cannot be dismissed at this stage for two reasons.  First, the Court has already concluded that Plaintiff adequately states a claim of unlawful entry.  If the police officers illegally entered Plaintiff's apartment (and they had no reason to believe, after entering the apartment, that Mitchell had authority to consent to a search), it would follow that they were not in the apartment "pursuant to lawful process" and, thus, that their protective sweep was invalid.  Second, and in any event, Plaintiff alleges that the Officer Defendants "ransack[ed]" his apartment as part of a "top-to-bottom" search.  (SAC ¶ 91).  Those allegations are more than sufficient to state a claim that the Officer Defendants' search extended beyond the "cursory visual inspection of those places in which a person may be hiding" permitted by *Buie*. 494 U.S. at 327.  And because "the law regarding protective sweeps was 'clearly established' under [*Buie* and *Miller*] at the time of the officers' conduct in this case," the Court concludes that the Officer Defendants are not entitled to qualified immunity, at least for the purposes of this motion.  *Palmieri v. Kammerer*, 690 F. Supp. 2d 34, 47 (D. Conn. 2010).

## C.     The Second Entry

Plaintiff also asserts an unlawful entry claim based on the Officer Defendants' second entry into his apartment, which occurred while he was detained at the police station.  (SAC ¶¶ 109, 113).  It is true that in *Fernandez v. California*, — U.S. —, 134 S. Ct. 1126, 1134 (2014), the Supreme Court held that *Randolph's* requirement of co-tenant consent does not apply where the co-tenant was not physically present at the time of the search, even when the co-tenant "was absent only because the police had taken him away."  Nevertheless, Plaintiff's claim based on the second entry cannot be dismissed because, as discussed above, the Court cannot say — based on the current record — that Mitchell had actual or apparent authority to consent to the second entry.  That is, although the holding in *Randolph* does not apply where, as here, an objecting

tenant is absent from the scene (at least where the police were objectively justified in removing the tenant from the premises, *Fernandez*, 134 S. Ct. at 1134), the Officer Defendants were not allowed to enter Plaintiff's apartment unless they had a warrant or an exception to the warrant requirement applied.  There is no suggestion that the Officer Defendants went and obtained a warrant.  Instead, they contend that the consent exception applies because Mitchell authorized them to enter the apartment.  (Defs.' Mem. 15-16).  But the Court has already determined that — based on the limited record before the Court — Mitchell lacked actual or apparent authority to consent to their entry.  Thus, the Court concludes that Plaintiff states a valid Fourth Amendment claim with respect to the Officer Defendants' second entry into his apartment as well.

**D.      Due Process**

Plaintiff also alleges that the Officer Defendants permitted Mitchell to deprive him of property without due process of law by allowing Mitchell into his apartment while he was detained at the police station, so that they could "confiscate various items of Plaintiff's personal property."  (SAC ¶¶ 114, 127; Pl.'s Mem. 20).  Not all deprivations of private property by a state actor, however, give rise to a claim under Section 1983.  Specifically, there is no constitutional violation, and, thus, no Section 1983 liability, if the deprivation was the result of a "random unauthorized" act and state law provided an adequate post-deprivation remedy.  *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 156 (2d Cir. 2006) (internal quotation marks omitted); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that the intentional deprivation of property is not actionable under Section 1983 if there is a meaningful post-deprivation remedy available under state law).  A deprivation is "random [and] unauthorized" when it is not performed pursuant to "an established state procedure."  *Beechwood*, 436 F.3d at 156 (internal quotation marks omitted).  In addition, even when not sanctioned by an established

state procedure, a deprivation performed by a "high-ranking official" with "final authority over significant matters" will not be considered random and unauthorized. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (internal quotation marks omitted).

In this case, Plaintiff contends that the seizure of his property was not "random and unauthorized" because it was done pursuant to N.Y. C.P.L. § 530.11(6), which provides that victims of domestic violence must be given notice stating that, as a victim of domestic violence, "you may request that the officer assist in providing for your safety and that of your children, including providing information on how to obtain a temporary order of protection.  You may also request that the officer assist you in obtaining your essential personal effects"  (SAC ¶¶ 114, 127; Pl.'s Mem. 20-21).  By its terms, however, the statute deals only with notice, and, at most, it authorizes retrieval of a victim's *own* personal effects; it does not authorize a police officer to allow an alleged victim to take property from his or her alleged abuser.  Thus, Plaintiff fails to identify an established policy pursuant to which the alleged deprivation took place.  In addition, there is no suggestion in the SAC that any of the Officers Defendants — who consist of a sergeant, a detective, and several officers (Defs.' Mem. 1) — is a "high-ranking official" with "final authority over significant matters."  *Cf. Fredricks v. City of N.Y.*, No. 12-CV-3734 (AT), 2014 WL 3875181, at *7 (S.D.N.Y. July 23, 2014) (concluding that the plaintiff had failed to adequately allege an established state procedure because the complaint lacked any allegations that the defendant, a captain with the New York City Department of Corrections, "ha[d] any responsibilities other than merely supervising" subordinate correctional officers).  Accordingly, the alleged deprivation of Plaintiff's property was, as a matter of law, "random and unauthorized."  Because state-law actions for conversion, trespass to chattels, or replevin provide an adequate post-deprivation remedy to recover stolen or converted property, *see Stancati v.*

*Cnty. of Nassau*, No. 14-CV-2694 (JS) (ARL), 2015 WL 1529859, at *6 (E.D.N.Y. Mar. 31, 2015) ("To the extent that the alleged deprivation was random and unauthorized, New York state law provides an adequate post-deprivation remedy in the form of a state law cause of action for conversion, which would fully compensate Plaintiff for her alleged property loss."); *Fredricks*, 2014 WL 3875181, at *8 (same), Plaintiff fails to state a claim against the Officer Defendants under the Due Process Clause.[5]

**E.      Equal Protection**

Plaintiff's last substantive constitutional claim is brought pursuant to the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff contends that the Officer Defendants violated his equal protection rights by arresting him for assault, but not arresting Mitchell for possessing the keys to his apartment, which he maintains were stolen property.  (SAC ¶¶ 119-120).  He advances two theories of liability: first, that the Officer Defendants selectively enforced the laws based on impermissible criteria, and, second, that they treated him as a "class of one."  (*Id.* ¶ 120).  To prevail under the first theory, Plaintiff must show "(1) that . . . , compared with others similarly situated, [he] was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004).  To prevail under the second, he "must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate

---

[5]      Even if Plaintiff did state a due process claim, the Officer Defendants would be entitled to qualified immunity as there appears to be no case within this Circuit that even calls into question the constitutionality of Section 530.11.  *See Amore v. Novarro*, 624 F.3d 522, 532-34 (2d Cir. 2010) (finding an officer qualifiedly immune for arresting someone pursuant to a statute that remained on the books, *even though* the statute had been declared unconstitutional).

governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fahs Const. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (internal quotation marks omitted).

Both theories fail for the same reason: Plaintiff fails to allege that he was treated differently from someone who was similarly situated to him.  For purposes of showing selective prosecution, some courts have held that a plaintiff must allege an "extremely high degree of similarity," while others have held that a plaintiff must allege only that he was similar in all material respects.  *See, e.g.*, *Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) (collecting cases).  In the class-of-one context, "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Id.* Whatever the context, Plaintiff's allegations fall short, as he was alleged to have assaulted Mitchell — a charge that any reasonable person would regard as far more serious than Plaintiff's claim that Mitchell, a former co-tenant, possessed an unauthorized set of keys to the apartment. *See, e.g.*, *Neilson v. D'Angelis*, 409 F.3d 100, 106 (2d Cir. 2005) (holding that two parties were not similarly situated where they committed different offenses even though reasonable persons might disagree as to which offense was more serious), *overruled on other ground by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Wood v. Town of E. Hampton*, No. 08-CV-4197 (DRH), 2010 WL 3924847, at *20 (E.D.N.Y. Sept. 30, 2010) (finding that the plaintiff was not similarly situated to another individual who was alleged to have committed less serious misconduct). Accordingly, Plaintiff's equal protection claims must be and are dismissed.[6]

---

[6]     Even if Plaintiff could show a sufficient similarity for purposes of the selective-prosecution theory, his claim would fail because — conclusory assertions aside — he does not plausibly allege that the selective treatment "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Freedom Holdings*, 357 F.3d at 234; *see Liang v. City of New*

F.      **Conspiracy**

Finally, the Court turns to Plaintiff's claim that the Officer Defendants and Mitchell conspired to violate his constitutional rights.  In order to survive a motion to dismiss on a Section 1983 conspiracy claim, a plaintiff "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  It is well settled, however, that claims "containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (internal quotation marks omitted).  As courts have emphasized, "the need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling.  If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a 'conspiracy' between private actors and state actors, these private actors would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a plausible conspiracy claim." *Harrison v. New York*, — F. Supp. 3d —, No. 14-CV-1296 (JFB) (AKT), 2015 WL 1413359, at *20 (E.D.N.Y. Mar. 20, 2015) (internal quotation marks omitted) (citing *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)).

Although Plaintiff repeatedly asserts that Defendants entered an agreement to violate his civil rights (*e.g.*, SAC ¶ 59), the SAC is devoid of facts that would render that allegation

---

*York*, No. 10-CV-3089 (ENV) (VVP), 2013 WL 5366394, at *11 (E.D.N.Y. Sept. 24, 2013); *John Gil Const., Inc. v. Riverso*, 99 F. Supp. 2d 345, 353 (S.D.N.Y. 2000) (dismissing the plaintiff's selective enforcement claim because "vague and speculative statements are insufficient to state a claim"), *aff'd*, 7 F. App'x 134 (2d Cir. 2001).

plausible as opposed to merely conceivable.  *Twombly*, 550 U.S. at 570.  Moreover, the

allegations that Plaintiff does make are wholly implausible.  For example, Plaintiff contends that

Defendants agreed to deprive him of his constitutional rights after they spoke to Plaintiff by

phone and before they entered Plaintiff's apartment building.  (SAC ¶¶ 57, 59; Defs.' Mem. 25).

But, as noted, Plaintiff alleges that Defendants had already hung up the phone when they formed

their agreement (SAC ¶¶ 57, 59), and he provides no explanation, much less a plausible

explanation, of how he could have known of an agreement that was reached outside of his

presence.  (*Id.* ¶ 22).  In addition, Plaintiff provides no reason or motive for why the Officer

Defendants would conspire with Mitchell.  In fact, the SAC alleges that Mitchell told Plaintiff

that she was going to lie to the police in order to get him arrested (*id.* ¶ 34), a statement that

suggests anything but an expectation on her part that the police officers would agree to violate

Plaintiff's constitutional rights.  Accordingly, Plaintiff's conspiracy claim must be and is

dismissed.

## G.     Claims Against Mitchell

As noted, the present motion is brought only by the Officer Defendants; in fact, Mitchell

has not yet been served, let alone appeared.  Nevertheless, Title 28, United States Code, Section

1915(e)(2)(B) provides that a court "shall dismiss" *sua sponte* a case or claim brought by a *pro*

*se* plaintiff if, among other things, the complaint "fails to state a claim upon which relief may be

granted."  *Crichlow v. Fischer*, No. 12-CV-7774 (NSR), 2015 WL 678725, at *9 (S.D.N.Y. Feb.

17, 2015); *see also DiProjetto v. Morris Protective Serv.*, 306 F. App'x 687, 688 (2d Cir. 2009)

(summary order) (affirming a district court's decision to *sua sponte* dismiss the complaint

against a non-moving defendant for failure to state a claim while resolving a separate defendant's

motion to dismiss).  That is warranted here.  Given the Court's conclusion that Plaintiff fails to

state a conspiracy claim against the Officer Defendants for conspiring with Mitchell, it

necessarily follows that his claim against Mitchell for conspiring with the Officer Defendants

also fails as a matter of law.  *See, e.g.*, *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (en

banc) (noting that, in order to state a claim for conspiracy, a plaintiff must "must provide some

factual basis supporting a meeting of the minds, such that defendants entered into an agreement,

express or tacit, to achieve the unlawful end").  And to the extent that Plaintiff alleges that

Mitchell was "a willful participant in joint activity with the State or its agents," *United States v.

Price*, 383 U.S. 787, 794 (1966), he fails to plausibly allege that there was "a close nexus

between the private actor and state actor," *Bender v. City of N.Y.*, No. 09-CV-3286 (BSJ), 2011

WL 4344203, at *14 (S.D.N.Y. Sept. 14, 2011); *see also Johnson v. City of N.Y.*, 669 F. Supp. 2d

444, 450-51 (S.D.N.Y. 2009) (holding that, to state a joint-actor claim, "a plaintiff must allege

that the private entity and state actors carried out a deliberate, previously agreed upon plan or

that their activity constituted a conspiracy or meeting of the minds." (internal quotation marks

omitted)).  That is, just as the SAC fails to allege a conspiracy in anything but conclusory

fashion, it fails to allege facts from which the Court could plausibly draw the inference "that

[Mitchell] and the [Officer] Defendants had a plan or prearrangement to violate Plaintiff's

constitutional rights."  *Lienau v. Garcia*, No. 12-CV-6572 (ER), 2013 WL 6697834, at *7

(S.D.N.Y. Dec. 19, 2013).  Accordingly, the Court concludes *sua sponte* that all claims against

Mitchell fail as a matter of law.

## CONCLUSION

For the reasons stated above, the Officer Defendants' motion to dismiss is GRANTED in

part and DENIED in part.  Specifically, with respect to the Officer Defendants, Plaintiff's equal

protection, due process, and conspiracy claims are dismissed, while his claims under the Fourth

Amendment — for the allegedly unlawful entries into his apartment and the allegedly unlawful search — survive.  (Additionally, as noted, the Officer Defendants did not move to dismiss Plaintiff's excessive-force claim.)  Further, the Court *sua sponte* dismisses the conspiracy and due process claims against Mitchell.  As those are Plaintiff's only claims against Mitchell, the Clerk of the Court is directed to terminate her as a party to this litigation.  The Clerk is also directed to terminate Docket No. 96 and to mail Plaintiff a copy of this Opinion and Order.

       SO ORDERED.

Date:  June 8, 2015
       New York, New York

JESSE M. FURMAN
United States District Judge